UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                               :
UNITED STATES OF AMERICA,                      :
                                               :
            - v. -                             :          13 Cr. 282 (VM)
                                               :
STEFAN BUCK,                                   :
                                               :
                    Defendant.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE
DEFENDANT'S MOTION FOR A BAIL HEARING**


                                          PREET BHARARA
                                          United States Attorney
                                          for the Southern District of New York
                                          Attorney for the United States of America


Jason H. Cowley/Sarah E. Paul
Assistant United States Attorneys

        - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
UNITED STATES OF AMERICA,                   :
                                            :
              - v. -                        :          13 Cr. 282 (VM)
                                            :
STEFAN BUCK,                                :
                                            :
              Defendant.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION FOR A BAIL HEARING

### PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the motion of defendant Stefan Buck (the "defendant" or "Buck"), who has been a fugitive for more than a year and a half, asking the Court to set bail while he remains a fugitive so he can *then* decide whether to return to the United States and appear before this Court. Although Buck has been aware of the indictment pending against him since at least May 2013, he has deliberately chosen to remain in Switzerland rather than return to the United States and submit himself to the jurisdiction of this Court. While openly flouting the Court's jurisdiction for more than a year and a half, Buck—while still a fugitive—asks this Court to adopt a bail package that *he* deems suitable. Presumably, if the bail package is acceptable to him, Buck will return; if, on the other hand, he disapproves of the bail package, he will simply remain in Switzerland and continue to refuse to submit to the Court's jurisdiction. The Court should not countenance the defendant's attempt to flout the Court's jurisdiction on the one hand while simultaneously seeking favorable relief from the Court on the other. The defendant can and should travel to the United States, make an appearance, and then, if he wishes, make a legitimate bail application for the Court's consideration. The defendant should not, however, be permitted to remain safely ensconced in

Switzerland, ask this Court to provide guarantees regarding bail before he decides to set foot in the Courthouse, and remain in a position to obey the Court orders that he likes while ignoring those he does not. Accordingly, the defendant's motion should be denied.

## BACKGOUND

On April 16, 2013, Buck and a co-defendant, Edgar Paltzer, were charged in a one-count indictment (the "Indictment") with conspiring with U.S. taxpayers, among others, to help those U.S. taxpayers maintain and hide from the Internal Revenue Service ("IRS") secret Swiss bank accounts and evade taxes. Buck worked at a bank in Switzerland ("Swiss Bank No. 1") where he helped U.S. taxpayer-clients open and maintain undeclared accounts. Starting in 2007, Buck served as the head of private banking at Swiss Bank No. 1. In 2012, Buck was named to the three-person executive board of the bank. In addition to opening and maintaining these undeclared accounts, Buck undertook additional efforts to help give clients access to their undeclared funds in a manner that would reduce the chances of the IRS detecting the accounts, including, as alleged in the Indictment, sending structured checks to clients in the United States. *See* Ind. ¶ 67. The investigation has also revealed that Buck traveled to the United States during the course of the charged conspiracy and met with U.S. taxpayer-clients in Manhattan during at least one trip.

Within approximately three weeks of Paltzer's being charged, U.S. counsel for Paltzer contacted the U.S. Attorney's Office (the "Office") and shortly thereafter, indicated that his client was prepared to explore a guilty plea. Subsequently, on or about August 14, 2013, Paltzer voluntarily traveled to the United States knowing he would be arrested, and was presented before U.S. Magistrate Judge Ronald L. Ellis, who imposed conditions of release. Dkt. # 14. Although counsel for Paltzer and the Office agreed on a *proposed* bail package prior to Paltzer's traveling

2

to the United States and his subsequent arrest, Paltzer neither sought, nor obtained, any orders from the Court regarding bail before making the decision to come to the United States and make an appearance.   Instead, he chose to subject himself to all of the rulings of this Court, regardless of whether he found them favorable or not.

Since being charged in April 2013, Buck has been aware of the Indictment and has refused to return to the United States to face the charges against him.  U.S. counsel for Buck first contacted the Office in May 2013 regarding the case.

<u>**ARGUMENT**</u>

**I.    THE COURT SHOULD DECLINE TO CONSIDER THE DEFENDANT'S PROPOSED BAIL PACKAGE UNDER THE FUGITIVE DISENTITLEMENT DOCTRINE**

The Court should apply the fugitive disentitlement doctrine and refuse to consider any bail application of the defendant until the defendant submits himself to the jurisdiction of this Court.

**A.    The Fugitive Disentitlement Doctrine**

As the Second Circuit has recognized, the fugitive disentitlement doctrine, "which may be invoked at the discretion of the court, is grounded on the impropriety of permitting a fugitive to pursue a claim in federal court where he might accrue a benefit, while at the same time avoiding an action of the same court that might sanction him."  *United States* v. *Eng*, 951 F.2d 461, 465 (2d Cir. 1991), *abrogated on other grounds by Degen* v. *United States,* 517 U.S. 820 (1996).  As explained by the Second Circuit in *United States* v. *Morgan*, 254 F.3d 424, 426-27 (2d. Cir. 2001), the fugitive disentitlement doctrine serves four purposes:  "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty

for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." (quoting *Empire Blue Cross & Blue Shield* v. *Finkelstein*, 111 F.3d 278, 280 (2d Cir. 1997)). "The doctrine of fugitive disentitlement rests on a principle of mutuality. The rationale is that a court should not afford a fugitive, who is unwilling to submit to its jurisdiction and stand trial for an alleged crime, the opportunity to improve his position by challenging the jurisdiction of the court." *United States* v. *Eagleson*, 874 F. Supp. 27, 29 (D. Mass. 1994).

At its core, the fugitive disentitlement doctrine was developed to avoid the "unseemly spectacle recognized by the Supreme Court in *Degen* and [the Second Circuit] in *Eng* of a criminal defendant who . . . attempts to invoke from a safe distance only so much of a United States court's jurisdiction as might secure him [his interests] while carefully shielding himself from the possibility of a penal sanction." *Collazos* v. *United States*, 368 F.3d 190, 200 (2d Cir. 2004); *see Finkelstein*, 111 F.3d at 280-82 (holding that fact there is "no reason to entertain the cause of one who will respond to a judgment only if it is favorable"); *United States* v. *Gayatrinath*, No. 02 Cr. 673, 2011 WL 873154, at *2-3 (S.D.N.Y. Mar. 11, 2011) (explaining that the fugitive disentitlement doctrine "provides that the fugitive from justice may not seek relief from the judicial system whose authority he or she evades . . . "); *United States* v. *Oliveri*, 190 F. Supp. 2d 933, 935 (S.D. Tex. 2001) (invoking the doctrine to refuse consideration of pre-trial motion filed by fugitive and explaining that the fugitive disentitlement doctrine "has come to signify the unwillingness of courts to waste time and resources exercising jurisdiction over litigants who will only comply with favorable rulings of the court"); *United States* v. *Stanzione*, 391 F. Supp. 1201, 1202 (S.D.N.Y. 1975) ("While, of course, defendant has not yet been convicted, until he is willing to submit his case for complete adjudication— win or lose— he

4

should not be permitted to call upon the resources of the court for the determination of selective claims.").

**B.      The Defendant is a Fugitive and the Disentitlement Doctrine Applies**

Perhaps recognizing that application of the fugitive disentitlement doctrine counsels strongly against his requested relief, the defendant incorrectly asserts that he is not a fugitive. The defendant's conclusory assertion flies in the face of common sense and is contrary to settled law in this Circuit.  The defendant is a fugitive, and the fugitive disentitlement doctrine plainly applies.  The defendant is a fugitive because he has known since at least May 2013 of the pending criminal charges against him but has "ma[d]e no effort to return to the United States to face charges." *Gayatrinath*, 2011 WL 873154, at *3 (holding that a defendant, who learned he was charged while overseas, chose to remain overseas, and had "no legal impediment to . . . voluntary" appearance in the United States was a fugitive); *SEC* v. *Roman*, No. 94 Civ. 3621 (SAS), 1996 WL 34146, at *1 (S.D.N.Y. Jan. 30, 1996)  ("For the purpose of the disentitlement doctrine, anyone who knowingly fails to appear for an arraignment is a fugitive.") (citing *United States* v. *$45,940*, 739 F.2d 792, 796 (2d Cir. 1984)).

Contrary to the defendant's suggestion, the defendant need not be present in the United States, be charged, and then flee in order to be considered a fugitive under the eyes of the law. Instead, the Second Circuit has expressly adopted the concept of constructive flight, holding that a "fugitive" is someone who evades prosecution by either actively avoiding arrest or remaining in a geographic location that is out of the authorities' reach.  In *United States* v. *Catino*, 735 F.2d 718 (2d Cir. 1984), the Second Circuit explained:

> The intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are

> pending. This is true whether the defendant leaves the jurisdiction intending to avoid prosecution, or, having learned of the charges while legally outside the jurisdiction, "constructively flees" by deciding not to return.

*Catino*, 735 at 722.  *See also Eng*, 951 F.2d at 464 ("Fleeing from justice is not always a physical act; it may be a state of mind. When a person purposely leaves the jurisdiction or decides not to return to it, in order to avoid prosecution, he is a fugitive."); *United States* v. *Hernandez*, No. 09 Cr. 625 (HB), 2010 WL 2652495, at *5 (S.D.N.Y. June 30, 2010) (explaining, in case involving a non-U.S. citizen who was inadvertently deported from the United States and then chose not to return to face charges was a fugitive, that "how the person became a 'fugitive' is not necessarily relevant because the focus is on the intent to return and appear before the court."); *United States* v. *Gorcyca*, No. 08-CR-9 (FB), 2008 WL 4610297, at *2 (E.D.N.Y Oct. 16, 2008) (denying motion to dismiss indictment under fugitive disentitlement doctrine where defendant was indicted while abroad and made no effort to return to U.S.).

Additionally, a complete reading of *United States* v. *Schreiber*, 535 F. Supp. 1359 (S.D.N.Y. 1982) (RLC), the one decision from this Court cited by the defendant in support of his argument that he is not a fugitive, reveals the holding of *Schreiber* to be consistent with *Catino* and other subsequent cases.  In *Schreiber*, the defendant moved to the United Kingdom in 1964, was indicted in 1966, learned of the indictment that same year, and chose to remain outside of the United States.  The Court had little trouble in determining he was a fugitive, holding: "While Schreiber was not a fugitive in July 1964 when he left this country, he became in effect a fugitive in the summer of 1966 when he knew that he was under indictment and made no effort to return to this country to face the charges."  *Schreiber*, 535 F. Supp. at 1363.  While the defendant accurately quotes a particular sentence of the court's decision in that case that "[o]ne, of course, cannot be a fugitive unless he was present in the demanding state at the time the crime was

6

committed," he fails to quote a different sentence later in the same paragraph: "However, the intent necessary to render absence [into] flight may be found when one already outside the country declines to return as well as when one leaves the country to avoid prosecution." *Id*.

The unpublished order from the Southern District of Florida that was also cited by the defendant, *United States* v. *Ogiermann, et al*., 10 Cr. 80157 (KAM) (S.D. Fl. Jan. 26, 2011) (the "Ogiermann Order"), does *not even address* the issue of fugitive disentitlement, despite the fact the fugitive disentitlement doctrine was specifically raised in the government's opposition to the defendants' bail motion in that case.[1] This is all the more striking given that the Eleventh Circuit has expressly adopted the notion that a "defendant need not leave the jurisdiction, but—while legally outside the jurisdiction—may constructively flee by deciding not to return" in order to be considered a fugitive. *United States* v. *Barnette*, 129 F.3d 1179, 1184 (11th Cir. 1997). Accordingly, it is unsurprising that the Ogiermann Order appears never to have been cited in any judicial opinion, and the Government respectfully submits that the Court should not consider it to be persuasive authority, especially in light of the well-developed law in the Second Circuit and this District regarding the fugitive disentitlement doctrine.[2]

---

[1] A review of the docket for the *Ogiermann* case indicates that the court in that case originally granted the defendants' request for a bail hearing (absent the defendants' presence) on the same day they filed their motion, without even giving the Government the opportunity to respond. *See Ogiermann*, Dkt # 8 and 9. The Government later filed an opposition (Dkt # 22), arguing, inter alia, that the court should decline to carry out a bail hearing and set bail conditions based on the fugitive disentitlement doctrine. As stated *supra*, the court in *Ogiermann* did not even address the fugitive disentitlement doctrine in either of its rulings on this issue. *See* Dkt ## 9, 25.

[2] Additionally, the *Ogiermann* case is factually distinguishable from the present case in at least one material respect. In *Ogiermann*, the defendants, through counsel, sought relief from the court regarding a bail package within less than a month after they had been charged. *See Ogiermann*, Dkt # 1 Oct. 28, 2010 Indictment) and # 5 (Nov. 24, 2010 correspondence with presiding district court judge). In this case, by contrast, the defendant has been a fugitive for over a year and a half before filing the instant motion.

Where courts have actually considered and addressed the fugitive disentitlement doctrine as applied to foreign nationals and foreign residents, they have repeatedly found the doctrine to apply and exercised their discretion to deny fugitive-defendants' requested relief. *See United States* v. *Chung Cheng Yeh*, No. CR 10–00231 (WHA), 2013 WL 2146572, at *2-3 (N.D. Cal. May 15, 2013) (applying disentitlement doctrine to Taiwanese defendant who "has never come to the United States" based on his knowledge of charges and refusal to travel to the United States to make an appearance, holding:  "Until [the defendant] is willing to submit his case for complete adjudication . . . he should not be permitted to utilize the resources of the court to determine isolated issues, or to obtain further discovery. . .  It would be a waste of resources to adjudicate advisory opinions at his behest."); *United States* v. *Kim*, SACR 09-0077 (JVS) (C.D. Cal. April 4, 2011) (citing *Catino*, and relying on fugitive disentitlement doctrine to deny motion by defendant, who was a citizen and resident of South Korea, to make a special appearance to join and file pre-trial motions while refusing to make an appearance, explaining that the fugitive disentitlement doctrine "puts an end to the proverbial 'Heads, I win/tails, you lose' gambit.") (order attached as Ex. A), *mandamus denied*, 571 Fed. App'x 556 (9th Cir., April 24, 2014), *cert. denied*, 135 S. Ct. 426 (Oct. 20, 2014); *Hernandez*, 2010 WL 2652495, at *5 (finding "compelling" the argument a non-U.S. citizen who was inadvertently deported from the United States and then chose not to return to face charges was a fugitive); *United States* v. *Mann*, No. 00 Cr. 632 (WHP), 2003 WL 1213288, at *1 (S.D.N.Y. Mar. 17, 2003) (holding that a U.S. citizen who was a longtime resident of Mexico was a fugitive "as a matter of law" because he "failed to return to the jurisdiction to face the charges"); *Oliveri*, 190 F. Supp. 2d at 935 (concluding that Italian national and resident who was in Italy when charged was a fugitive);  *Eagleson*, 874 F.

8

Supp. at 29-30 (finding Canadian citizen and resident who had not returned to the United States to face charges was a fugitive for purposes of disentitlement doctrine).

Based on this well-developed law in the Second Circuit and elsewhere, as well as common sense, the defendant is properly classified as a fugitive.  He has been on notice of the charges against him since at least May 2013, when his U.S. counsel contacted the Office to discuss the charges.  Since then, he has refused to travel to the United States to make an appearance and face the charges against him.  Indeed, he acknowledges that he remains in Switzerland, in part, based on his belief that the U.S. government has filed a "red notice" with Interpol that would cause the defendant to be arrested if he left Switzerland.  Def. Mot. at 4.  The defendant has deliberately chosen not to return to the United States and to avoid authorities in order to prevent his arrest and appearance in the United States.  Under *Catino*, *Eng*, and the additional authority cited above, the defendant is a fugitive for purposes of application of the fugitive disentitlement doctrine.

> ### C.     The Court Should Deny the Defendant's Motion Under the Fugitive Disentitlement Doctrine and Decline to Consider His Proposed Bail Package Until He Appears

Because the defendant is a fugitive and because entertaining the merits of the defendant's bail motion while he remains a fugitive would implicate the core policy considerations underlying the doctrine, the Court should decline to consider the merits of the defendant's motion until the defendant "is willing to submit his case for complete adjudication— win or lose." *Stanzione*, 391 F. Supp. at 1202.  The defendant "should not be permitted to call upon the resources of the court for the determination of selective claims."  *Id*.

As the Second Circuit has articulated, four primary policy rationales underlie the development of the fugitive disentitlement doctrine: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." *Morgan*, 254 F.3d 426-27.  Each of these factors counsel towards the Court's application of the doctrine to deny the defendant's requested relief.

First, the defendant seeks a ruling from the Court that is effectively advisory in that it is in no way enforceable against the defendant.  If the Court considers the merits of the defendant's bail application and grants the defendant's requested relief, the defendant will presumably travel to the United States and make an appearance.  However, if the Court declines to enter the defendant's requested bail package, the defendant would presumably say, or at the least, have the ability to say, "no thank you" and choose to remain safely ensconced in Switzerland, with the Court having no ability to compel compliance with its orders.  As the United States District Court for the Northern District of California recently articulated in applying the doctrine: "It would be a waste of resources to adjudicate advisory opinions at [the defendant's] behest." *Chung Cheng Yeh*, 2013 WL 2146572, at *3.[3]

---

[3] The Government is aware of only a single appellate decision in a criminal case, from the Seventh Circuit, ordering that a district court, which previously denied a motion based on fugitive disentitlement, consider the merits of a motion to dismiss by a foreign national residing overseas who had not appeared.  *See In re Hijaz*, 589 F.3d 401, 411 (7th Cir. 2009) (dealing with a Lebanese citizen residing in Kuwait).  The Seventh Circuit, however, has not adopted the same standards as the Second Circuit in evaluating whether a particular defendant is a fugitive.  *See In re Han Yong Kim*, 571 Fed. App'x 556, 557 (9th Cir. April 24, 2014) (denying defendant's request for mandamus after district court applied fugitive disentitlement doctrine to decline to consider defendant's pre-trial motion and specifically noting split between the Second Circuit's

Second, if the Court were to enter an order contrary to the fugitive defendant's request, it would have no means of imposing a penalty for flouting the judicial process.  An arrest warrant has already been issued, and there is simply no additional penalty that can be imposed until the defendant makes an appearance and submits himself entirely to the Court's orders.  Relatedly, the doctrine seeks to impose a penalty for a fugitive defendant who has already flouted the Court's jurisdiction and the judicial process.   The defendant was charged over a year and a half ago and has been on notice of the charges against him for that time period.   The Court should not reward the flouting of its authority by considering the defendant's requested relief while he chooses to remain in Switzerland unless or until the Court imposes terms that are acceptable to him.

Third, the Court should decline to consider the defendant's motion in order to "discourag[e] flights from justice and promot[e] the efficient operation of the courts," *Finkelstein*, 111 F.3d at 280, as well as to avoid prejudice to the Government.  The policy implications of the Court's considering the merits of the defendant's request are far-reaching.  If defendants were allowed to litigate motions, including favorable bail packages, while evading arrest and absenting themselves from the country, they would have an enhanced incentive to flee. Any logical defendant would rather flee, seek to obtain favorable bail terms from the Court while still abroad and/or on the run, and then decide whether to turn himself in after the Court issues a ruling, rather than make an appearance, subject himself to all of the Court's rulings, and be forced to comply with a ruling that displeased the defendant.  To allow fugitives to seek and

---

decision in *Catina* and the Seventh Circuit's decision in *Hijaz*), *cert. denied*, 135 S. Ct. 426 (Oct. 20, 2014).

11

obtain bail-related relief from courts would not only allow, but actually incentivize a defendant to "eat his cake and have it too" (*Eng*, 951 F.2d at 462) by engaging in the very "'[h]eads, I win/tails, you lose' gambit" (*Kim*, SACR 09-0077 at 2) that the fugitive disentitlement doctrine was designed to prevent.

This factor is particularly acute in regard to a fugitive's application regarding bail conditions.  In the context of a fugitive's attempting to secure the terms of a favorable bail package of his choosing while abroad, a Court may be inclined to succumb to the defendant's requests in order to persuade the defendant to make an appearance and initiate the case, an issue that is simply not triggered by a defendant who is arrested or otherwise makes an appearance in the normal course.  In this regard, entertaining the merits of a fugitive-defendant's requested bail package sends a message to defendants (and putative defendants) that their negotiation and litigation position in regard to bail might actually be enhanced if they flee.  The Court should not accept the fugitive-defendant's invitation to proceed on such a course.

The defendant is impermissibly "attempting to obtain the benefit of a favorable ruling from this court without risking the burdens that may flow from an adverse ruling." *Oliveri*, 190 F. Supp. 2d at 936.  As this Court noted when applying the fugitive disentitlement doctrine in another case:  "As of now, defendant is willing to enjoy the benefits of a legal victory, but is not at all prepared to accept the consequences of an adverse holding." *Stanzione*, 391 F.Supp. at 1202.  The Government respectfully submits that like the courts in *Oliveri*, *Stanzione* and a myriad of other cases in which fugitive-defendants sought relief from the very courts whose authority they flaunted, the Court should deny the defendant's requested relief in the present

case. Instead, the Court should entertain the merits of any proposed bail package by the defendant if and when the defendant chooses to appear.[4]

## II.     THE BAIL STATUTE DOES NOT ALLOW FOR THE DEFENDANT'S REQUESTED RELIEF

### A.     Section 3142 Refers to "Appearance" and "Release" of Defendant

In addition to the fugitive disentitlement doctrine, the Court should deny the defendant's requested relief based on the plain language of the relevant bail statute, Title 18, United States Code, Section 3142. Section 3142(a) provides: "*Upon the appearance* before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be [detained or released]" (emphasis added). In regard to bail/detention hearings, the statute further provides that: "The hearing shall be held *immediately upon the person's first appearance before the judicial officer* unless that person, or the attorney for the Government, seeks a continuance." 18 U.S.C. § 3142(f) (emphasis added).

Additionally, Section 3142 also speaks expressly of "release." For example, Section 3142(a) states:

> In general.-- *Upon the appearance before a judicial officer of a person charged with an offense*, the judicial officer shall issue an order that, pending trial, the person be—
>
> (1) *released* on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;

---

[4] Because the Government believes that the Court should deny the defendant's motion pursuant to the fugitive disentitlement doctrine, it has not addressed the substance of the defendant's position regarding an appropriate bail package. The Government does not believe that the defendant's proposed package is sufficient to assure the defendant's appearance at future proceedings. However, if the Court wishes to consider the merits of the defendant's bail application notwithstanding the fugitive disentitlement doctrine, the Government respectfully requests the opportunity to be heard regarding its position on the insufficiency of the defendant's proposed package. Perversely, given Buck's current posture, the stricter the conditions the Court were to impose, the *less* likely he would be to appear.

       (2) *released* on a condition or combination of conditions under subsection (c) of this section;

       (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or

       (4) detained under subsection (e) of this section.

18 U.S.C. § 3142 (emphasis added); *see also* 18 U.S.C. § 3141(a) ("A judicial officer authorized to order the arrest of a person under section 3041 of this title before whom an arrested person is brought shall order that such person be *released* or detained, pending judicial proceedings, under this chapter.") (emphasis added).[5]

      **B.**    **The Defendant Has Not Appeared Before the Court and Has Not Been Arrested, and Therefore Cannot Be Released**

      The defendant's own acts preclude the relief sought by defendant.  The defendant has not appeared before the court, as specifically referenced by Section 3142(a).  Furthermore, because of his decision to remain abroad and avoid prosecution for more than a year and a half, the defendant has neither been arrested nor surrendered.  As such, the Court cannot release the defendant, as specifically referenced in Section 3142.  Instead, under the present circumstances, the Court could only order that the defendant *would* be released pursuant to a certain set of conditions, if he were ever taken into custody.  Such an order would be purely advisory, and therefore impermissible.  *See Jennifer Matthew Nursing and Rehab. Center* v. *U.S. Dep't of Health and Human Services*, 607 F.3d 951, 957 (2d Cir. 2010) ("[A] federal court lacks the

---

[5] As the defendant notes, the court in *Ogiermann* rejected the argument that Section 3142 requires the defendant's appearance before a bail package can be set, in part because the Government in that case could not cite any favorable judicial authority regarding that aspect of Section 3142.  The Government respectfully submits that this decision was erroneous.  Simply because the Government has not identified a judicial opinion confirming the meaning of the plain language of the statute does not equate to a conclusion that the statute somehow means something else.  Rather, it speaks more to the novel and extraordinary relief the defendant seeks.

power to render advisory opinions.") *quoting U.S. Nat'l Bank of Or.* v. *Indep. Ins. Agents of Am.*, 508 U.S. 439, 446 (1993).

The advisory nature of any such order highlights the ultimate reality of the defendant's application:  There are no conditions in the present posture that reasonably assure the defendant's appearance.  Section 3142 permits release or detention as necessary to "reasonably assure" the defendant's presence.  The defendant, however, has made it clear that he will determine whether to submit to the Court's jurisdiction based on the conditions set by the Court.  Ironically, the stricter the conditions set by the Court, the less likely the defendant is to actually appear.  As such, the Court is unable to reasonably assure the defendant's appearance until the defendant submits to the Court's jurisdiction without restriction.

## CONCLUSION

For the foregoing reasons, the defendant's motion should be denied.

Dated: New York, New York
       December 3, 2014

Respectfully submitted,

PREET BHARARA
United States Attorney

By:_____/s/_____
   Jason H. Cowley/Sarah E. Paul
   Assistant United States Attorneys